SNYDER *et al. v.* MISSOURI PAC. R. Co. *et al.*

ROTH *et al. v.* SAME.

(*Jackson*, April Term, 1945.)

Opinion filed March 2, 1946.

472

Hugh Stanton, of Memphis, I. M. Greer, of Harrisburg, Ark., and C. T. Carpenter, of Marked Tree, Ark., for plaintiffs in error (plaintiffs below).

Canada, Russell & Turner, of Memphis, for defendants in error.

Mr. Chief Justice Green delivered the opinion of the Court.

These two suits were brought by representatives of C. C. Huffman and Phillip N. Roth to recover damages for the deaths of the two men occasioned by a collision between an automobile in which they were riding and a train of defendant railroad company. The two cases were tried together. There was a verdict for plaintiffs for $2000 in Huffman's case and a verdict for plaintiffs for $7540 in Roth's case. Upon motion for a new trial, the circuit judge concluded that he should have directed

a verdict for the defendants in each case and accordingly dismissed both suits.

The court of appeals affirmed the judgment in the Huffman case and dismissed that suit. That court, however, reversed the judgment in Roth's case and remanded it for a new trial. Petitions for *certiorari* were filed by the aggrieved parties, both petitions were granted, and the case has been fully presented to this Court.

The accident occurred at the crossing of the railroad track and a public highway in Harrisburg, Arkansas, a village of about 1100 population. The declarations filed in these cases were largely based on alleged violations by the railroad company of certain statutes of the State of Arkansas; Pope's Digest, section 11135, requiring a bell or whistle to be rung or blown at a distance of at least 80 rods (1320 feet) as a train approached a road or street crossing and to be kept ringing or blowing until the train crossed the road or street; Pope's Digest, section 11144, providing for a lookout, and Pope's Digest, section 11153, as to comparative negligence, which last named statute we shall refer to later.

It is conceded that, as they are construed by the Arkansas court, a violation of the statutes does not impose absolute liability on a railroad company but to support an action the violation of the statutes must be the proximate cause of the accident.

The accident here involved occurred in the town of Harrisburg, where Jackson Avenue crosses the railroad track. The deceased men were driving in a one-seated car. The case has been tried on the theory that Huffman was driving the car and Roth sitting by his side. At the place of the collision the railroad track runs north and south and the car was approaching from the east, traveling west.

The train which struck these men was approaching from the north. The north side of Jackson Avenue east of the crossing is built up by a number of closely placed houses. The west side of the house nearest the railroad track is 76 feet from the center of that track. Between this house and the track are three trees which to some extent may be said to obstruct the view toward the north. The tree nearest to the track is 55 feet distant. Along this east side of the track there is a drainage ditch which is crossed by a bridge over which Jackson Avenue passes. The east edge of the bridge is 56 feet from the track and the west edge is 28 feet from the track.

The railroad track at this point is level and straight for a mile and a half or more north of the Jackson Avenue crossing. East of the crossing, some 155 feet, is a highway disk sign, called a flasher signal, to give warning of the proximity of the railroad. On nearing this crossing from the east, at a distance of 55 or 56 feet, there is practically a clear view of the track toward the north.

The car in which the deceased men were riding was struck by the engine of a heavily loaded freight train of some 40 cars, traveling at a speed of 48 or 50 miles an hour. The accident occurred about daybreak on a July morning but there is proof that the headlight of this engine was seen by men in the neighborhood of the crossing when the train was yet two miles distant. Evidence indicates that the automobile was traveling at the rate of about 25 miles an hour as it approached the crossing. Both occupants of the car were dead when the train was stopped and the trainmen went back to investigate the accident.

These two men lived at Weiner, Arkansas, fourteen miles from Harrisburg. Roth was a mechanic who operated a repair shop and Huffman worked for him.

The court of appeals finds it to be a fair inference from the proof that they were both familiar with the crossing in question. They were last seen alive about four a. m. on the morning of the accident at a roadhouse about a mile east of the crossing. Beer bottles, some empty and some full, were found in the car immediately after the collision. Huffman was seen in a barber shop at nine o'clock the night before and appeared to be under the influence of liquor to some extent. The automobile in question belonged to Roth.

The foregoing summary of the facts is largely a repetition of that made by the court of appeals, which is not challenged in any particular that we regard as material in disposing of this case.

We do not detail the facts further since, for the purposes of this opinion, we grant that there was sufficient evidence to take the cases to the jury on the question of the railroad company's guilt of proximate negligence. The question, however, is close. The proof is' that the warning signals were not begun by the railroad company's employees when the train was 1320 feet from the crossing but were given at a less distance. The court of appeals was of opinion that this failure to give the statutory warning, the speed of the train, and the nature of this crossing—that these things combined to make a case in which it should be left for the jury to say whether the railroad company was guilty of proximate negligence.

There remains to be considered, however, the question of the contributory negligence of Huffman and Roth.

Section 11153 of Pope's Digest, heretofore mentioned, is as follows:

"In all suits against railroads, for personal injury or death, caused by the running of trains in this State, contributory negligence shall not prevent a recovery where

the negligence of the person so injured or killed if of less degree than the negligence of the officers, agents or employees of the railroad causing the damage complained of; provided, that where such contributory negligence is shown on the part of the person injured or killed, the amount of recovery shall be diminished in proportion to such contributory negligence.''

The determinative question, then, is whether or not the negligence of the persons killed is of less degree than the negligence of the employees of the railroad company. If the negligence of the persons killed equaled or exceeded that of the employees of the railroad company, there could be no recovery in these cases. That seems well settled under the decisions of the Arkansas court.

The difficulty we have is in determining under the Arkansas decisions whether the quantum or degree of the negligence of the dead men herein should be determined by the court or left to the jury.

As repeatedly stated in the decisions of our sister state, no two cases of this nature present exactly the same state of facts. But we find a number of Arkansas cases in which the facts are quite similar to those here appearing and in some of these cases it was ruled that the negligence of the parties was to be compared by the court and in some that it was to be compared by the jury. Each line of cases is pressed upon our attention by the parties hereto.

As indicating that the comparison of negligence herein should be left to the jury, the plaintiffs refer us to *Missouri Pacific R. Co.* v. *Shell*, 208 Ark. 70, 185 S. W. (2d) 81; *Smith* v. *Missouri Pacific R. Co.*, 208 Ark. 40, 184 S. W. (2d) 951; *Missouri Pacific R. Co.* v. *Walden*, 207 Ark, 437, 181 S. W. (2d) 24; *St. Louis-San Francisco R.*

478

*Co.* v. *Beasley,* 205 Ark. 688, 170 S. W. (2d) 667; *Missouri Pacific R. Co.* v. *Yandell* (Ark. 1946), 191 S. W. (2d) 592.

As indicating that the comparison of negligence herein should be made by the court, the defendants refer us to *Missouri Pacific R. Co.* v. *Dennis,* 205 Ark. 28, 166 S. W. (2d) 886; *Missouri Pacific R. Co.* v. *Howard,* 204 Ark. 253, 161 S. W. (2d) 759; *Crossett Lumber Co.* v. *Cater,* 201 Ark. 432, 144 S. W. (2d) 1074; *Missouri Pacific R. Co.* v. *Davis,* 197 Ark. 830, 125 S. W. (2d) 785; and *Bradley* v. *Missouri Pacific R. Co.,* 8 Cir., 288 F. 484.

■ ■ From these cases and others to which we are referred, we gather the Arkansas rule to be that if, upon the facts of a case, reasonable men might differ as to whether the negligence of the plaintiff suing the railroad company was less than that of the employees of such company, that question should be left to the jury. If, upon the facts of the case, reasonable men would conclude that the negligence of the plaintiff suing the railroad company was not less than the negligence of the employees of such company, that question should be decided by the court. In other words, that the Arkansas court treats the disposition of this question of comparative negligence just about like this Court treats the disposition of the question of contributory negligence.

■ If we felt that the Tennessee courts were bound to determine this question of procedure according to Arkansas precedents, there would be abundant authority in the Arkansas decisions relied on by defendants and above cited for saying that negligence in the cases before us was to be compared by the Court. At any rate, as noted by the court of appeals, the weight of authority sustains the proposition that a matter of procedure—whether a particular question is for the court or jury—should be determined according to the law of the forum. Restate-

ment, Conflict of Laws, section 594; 11 Am. Jur., p. 524, and cases collected in Note, 89 A. L. R. 1278. Compare *Brenizer* v. *Nashville, C. & St. L. Ry.*, 156 Tenn. 479, 3 S. W. (2d) 1053, 8 S. W. (2d) 1099.

█ We do not think reasonable men should differ as to the degree of the negligence herein of Huffman, the driver of the car. It seems clear to us that his negligence equaled or was greater than the negligence of the employees of the railroad company and that his representatives are entitled to no recovery.

█ In Arkansas, as elsewhere, a railroad track is an admonition of danger and it is the duty of persons crossing the track to look and listen before making this effort. Such persons are bound by what they could have discovered had they looked or listened. If the duty to look and listen cannot be adequately performed without stopping, it is the duty of the traveler to stop. Apart from his knowledge of this crossing this driver had warning of the railroad track ahead of him by the flasher signal when he was yet over 150 feet distant. If his view to his right and left was obscured at that time, it became his duty to approach the track with his car under control. Had he done so, when he reached the point 55 feet from the track, he would have had a clear view of the approaching train from the north. The headlight of the train was visible and its noise was audible to others in the vicinity when the train was quite a distance away from the crossing. The whistle was blown when the train was some 750 feet from the crossing and had the driver paused or had his car been under control, he could have stopped it in time even after the whistle blew.

It is true the proof tends to show that the employees of the railroad company did not give the required signal at the proper distance from the crossing; that Jackson

Avenue. at the point of the crossing carried two main highways; that the crossing was located in a town; and that the train was running at a high rate of speed. At the same time the proof shows that the whistle was blown in time for the driver of the car to have averted the accident had he taken the proper precautions for his safety; that the town was a small village; that the collision occurred at an hour when there was not likely to be much travel; and the train was not running at an unusual rate of speed for trains of that class in that locality.

We agree with the court of appeals that the negligence of the driver of the car equaled or exceeded that of the employees of the railroad company and requires the dismissal of his representatives' (the Huffman) suit. We do not follow the court of appeals, however, in its ruling that the negligence of Huffman is not to be imputed to Roth and does not bar recovery by the representatives of Roth as well as by the representatives of Huffman.

It is to be remembered that this was Roth's car. Huffman was his employee. Roth was riding in his own car and regardless of whether Huffman's employment included car driving regularly, at the time of the accident he was obviously driving with Roth's consent. Roth had dominion over the operation of his automobile.

There is nothing in the proof indicating that the two men were out on the night before the accident about any individual business of Huffman. Nothing to indicate that Huffman was a bailee of the car. Whether the parties were out on business or pleasure does not distinctly appear but we may infer that it was for the latter purpose. The refreshments in the car and the place in which the car was last seen confirm this view.

When the owner is in his own car he has the right to control its operation unless there has been some bailment of the car to the driver. The reason that the negligence of a driver of a car cannot be imputed to his guest, a passenger in the car, is that the latter has no control of the car or of its operation. If the guest is himself free from negligence he cannot be charged with the negligence of the driver. Such is the general rule and some of the Arkansas decisions to which we have referred fully recognize the rule and its reason.

On the contrary, it is well settled that the owner of a car, riding in it, the driver being under his control, cannot recover from a third person on account of an accident when the owner's driver was guilty of contributory negligence. This is settled in Tennessee by the cases of *Ringwald* v. *Beene,* 170 Tenn. 116, 92 S. W. (2d) 411, and *Angel* v. *McClean,* 173 Tenn. 191, 116 S. W. (2d) 1005. In the latter case Justice McKinney reviews the authorities rather fully. In each of these cases the rule was applied even against a wife, the owner of the car in which she was riding, and which her husband was driving.

In 5 American Jurisprudence, p. 785, it is said:

"Where a relation of principal and agent or master and servant exists between the driver and an occupant of an automobile, the rule is too well settled to need support of authority that the negligence of the agent or the servant is imputable to the principal or master and will prevent his recovery against a third person."

In *Angel* v. *McClean, supra,* 173 Tenn. at pages 195, 196, 116 S. W. (2d) at page 1007, this Court quoted and approved section 491, Restatement of the Law of Torts, as follows:

"Any one of several persons engaged in an enterprise is barred from recovery against a negligent defendant by

482

the contributory negligence of any other of them if the enterprise is so far joint that each member of the group is responsible to the third persons injured by the negligence of a fellow member.''

█ Applying this test here, the conclusion is easy. It would scarcely be denied that Roth, the owner of this car, would have been liable for an injury inflicted on another by Huffman's negligent operation of the vehicle at the time of this accident.

Some minor criticisms of the opinion of the court of appeals made in plaintiffs' petition for *certiorari* and brief do not require discussion in view of the manner in which we have disposed of the cases.

It results that the judgment of the court of appeals in *Huffman's Case* is affirmed and the judgment of that court in *Roth's Case* is reversed and that suit dismissed also.