Kenneth E. McINTURFF,
Petitioner-Plaintiff,

v.

R. L. WHITE, Milburn Rice, Seaboard
Coast Line Railroad Company and
Louisville and Nashville Railroad Co.
d/b/a Clinchfield Railroad Company,
Respondents-Defendants.

Supreme Court of Tennessee.

Jan. 5, 1976.

Rehearing Denied March 8, 1976.

Lodge Evans, Roy C. Nelson, Allen & Nelson, Elizabethton, for petitioner-plaintiff.

H. Dennis Erwin, Erwin, Thomas E. Mitchell, Johnson City, for respondents-defendants.

## OPINION

FONES, Chief Justice.

Plaintiff McInturff sued the railroad companies, three security officers, and P. O. Likens, Chief Engineering Officer, all employees of Clinchfield, for libel and false imprisonment. The first trial in 1971, resulted in a jury verdict for the plaintiff, following which the trial judge directed a verdict for the defendants on the libel count and granted a new trial on the count for false imprisonment. The libel count was based upon a letter written by P. O. Likens, and thus he was not a defendant in the second trial. D. C. Peterson, the Chief Security Officer, died between the first trial and the second trial in 1973, abating the cause of action against him. Thus at the second trial the remaining defendants were the railroad companies and their employees, White and Rice.

The Court of Appeals overruled plaintiff's assignment of error directed to the action of the trial judge with respect to the first trial. Upon certiorari review we approved that action but granted the writ to consider the action of the Court of Appeals in reversing and dismissing the judgment in favor of the plaintiff at the second trial. The jury returned a verdict against the three railroad companies in the sum of fifty-five thousand ($55,000) dollars compensatory damages and twenty thousand ($20,000) dollars punitive damages. The jury did not render a verdict against the employees White and Rice. The liability of the railroad companies was predicated solely upon respondeat superior. The trial judge approved the compensatory damages, remitted the punitive damages, entered judgment against the railroad companies and in favor of White and Rice.

Relying upon *Loveman Co. v. Bayless,* 128 Tenn. 307, 160 S.W. 841 (1913), the Court of Appeals held that failure to find against White and Rice discharged the railroad companies and required dismissal of the lawsuit. In addition, the Court of Appeals found that plaintiff's testimony at the second trial was grossly contradictory of his testimony at the first trial; that plaintiff was without credibility, and his self-contradictory statements cancelled out his testimony at the second trial. Based upon that finding the Court of Appeals sustained defendant's assignment of error that there was no evidence to support the verdict and dismissed the suit on that ground also. This, in spite of the fact that the second trial jury did not have before it a single fragment of the testimony of the plaintiff adduced at the first trial.

We disagree with the learned Court of Appeals on both grounds.

## I.

The jury first reported a verdict in favor of plaintiff in the amounts stated above but failed to report which defendant or defendants were found liable. The trial judge instructed the jury to return to the jury room and complete the verdict by determining which defendant or defendants were liable to plaintiff. Upon returning the following occurred:

(Jury returns)

"The Court: Has the jury now reached a verdict as to which defendant or defendants you hold against?

"The Foreman: We have, sir.

"The Court: Will you please give me that?

"The Foreman: Clinchfield Railroad, Louisville & Nashville Railroad, Seaboard Coastline.

"The Court: Members of the jury, how do you find as to Milburn Rice and R. L. White?

"The Foreman: We found that they were acting as agents and employees of the company, sir.

"The Court: You found that they were acting as employees and agents of the Clinchfield Railroad Company?

"The Foreman: That's correct, sir.

"The Court: All right. Do you find, then, against Milburn Rice and R. L. White?

"The Foreman: No, sir."

The trial judge had the jury return to the jury room and expressed concern that the verdict was inconsistent unless it was based upon the conduct and actions of the deceased Chief Security Officer, Peterson. A colloquy between Court and counsel ensued, resulting in discharge of the jury, without further clarification of the verdict.

Plaintiff and defendants filed motions for a new trial which were overruled, final judgment was entered as described above, and all parties appealed.

In *Loveman Co. v. Bayless, supra,* two employees and the Loveman Company were sued for false imprisonment, slander and assault and battery. The jury rendered a verdict against the corporation and in favor of its employees. On defendant employer's appeal asserting that the verdict against it should be set aside because the jury had exonerated its employees who committed the acts complained of, Chief Justice Neil, writing for the court, said:

"To determine these controversies it is essential that we state the rule. It is, in substance, this:

When the master is sued solely for misfeasance, or nonfeasance, on the part of his servants, being liable for their conduct only under the doctrine of *respondeat superior,* a verdict, permitted to stand in favor of such servants, either in an action where they are sued with the master, or in a prior action, entitles the master to a discharge from such claimed liability." 128 Tenn. at 312, 160 S.W. at 842.

The reason for the rule was stated as follows:

". . . where the servant by whose act the injury occurred is exonerated it is contradictory and absurd to find the master guilty on the same evidence; that the servant's liability is primary, that of the master secondary, or derivative, depending wholly on his duty to respond for the fault of his servant in the line of his employment, in the nature of a suretyship; that when the relations between the two are left undisturbed, the master has the right to recover over against the servant for any liability imposed upon the former by the misconduct of the latter, but if the latter be exonerated in an action between him and the injured person, this *status* is destroyed, and the master prevented from such recovery." 128 Tenn. at 315, 160 S.W. at 843.

Our subsequent case law has developed the rule that such verdicts are inconsistent and neither the verdict in favor of the employee nor the verdict against the employer can be permitted to stand. The reasoning for that rule is found in *Berry v. Foster,* 199 Tenn. 352, 287 S.W.2d 16 (1955) wherein Justice Swepston quotes the following from *Gray v. Brooklyn Heights R.*

*Co.,* 175 N.Y. 448, 450, 67 N.E. 899, 900 (1903):

"When, however, the two actions are thus tried together and inconsistent verdicts are rendered, we incline to the view that sound practice requires both verdicts be set aside at once, without attempting, by analysis of the evidence or otherwise, to discover whether either should be allowed to stand. No other course is safe, for it cannot be told with reasonable certainty what facts the jury found." 199 Tenn. at 356, 287 S.W.2d at 18.

*See Milliken v. Smith,* 218 Tenn. 665, 405 S.W.2d 475 (1966); *Southern Railway Company v. Butts,* 214 Tenn. 328, 379 S.W.2d 794 (1964); and *Alabama Highway Express, Inc. v. Luster,* 51 Tenn.App. 691, 371 S.W.2d 182 (1963).

The learned trial judge had charged the jury that if they found in favor of White and Rice, they must also find in favor of the railroads, but obviously the jury ignored that instruction.

■ Plaintiff McInturff insists that the acts of Peterson, deceased, who was not a defendant at the second trial, were sufficient to support the jury verdict against his employers. He relies upon another rule stated in *Loveman Co. v. Bayless, supra,* that if there is evidence of liability of the employer on grounds other than the acts of the servant exonerated, the verdict may be sustained.

We are not deterred from an examination of the evidence at the second trial, sufficient to pass upon that contention, for lack of an appropriate assignment of error as was true in *Bayless.* From a careful review of the evidence in this case we are of the opinion that the actions of Peterson, White and Rice are so interwoven that the plaintiff's cause of action for false imprisonment must stand or fall upon the acts of the three security officers on the day in question. It is our opinion, that upon the evidence adduced at the second trial, a jury verdict exonerating any one of the three employees would be inconsistent and arbitrary and could not be permitted to stand. On the element of unlawful restraint, plain-

tiff's theory relies upon the acts of White and Rice, both armed, allegedly taking him into custody and accompanying him in his own pick-up truck to the railroad offices, their armed presence in and around Peterson's office and on the trip to McInturff's barn. Peterson was unarmed and although it is not disputed that he was the security officer in charge of the activities of the three railroad employees, plaintiff's theory and proof would fail as a matter of law, to make out a case of false imprisonment, without the acts of White and Rice, in concert with Peterson.

There is no merit to plaintiff's contention that independent grounds to support the verdict may rest upon the hearing on the question of discharging plaintiff from his employment with the railroad. The hearing was held in accord with the labor contract and wholly fails to support a cause of action based on false imprisonment.

## II.

■ The Court of Appeals observed that, of necessity, it had read the plaintiff's testimony at the first trial, preserved by a wayside bill of exceptions, and found it shockingly contradictory to his testimony at the second trial. On the element of unlawful restraint, it was said that the only evidence thereof was the testimony of plaintiff. Applying the principle that self-contradictory statements cancel out the testimony of a witness, the Court of Appeals held that there was no proof upon which the jury could have found for plaintiff. No authority is cited authorizing an appellate court to test the credibility of a witness at a second trial, by use of a wayside bill of exceptions preserving his testimony from the first trial. While acknowledging that normally a jury issue was presented, in the interest of justice, the court felt constrained to go further in this case.

We have carefully examined all of the evidence presented at the second trial and we are unable to find any questions posed to McInturff regarding his testimony at the first trial nor the reading of any portion of his prior testimony into the record.

It requires no citation of authority to hold that a jury verdict may not be set aside by an appellate court upon an assignment of error that there is no evidence to support the verdict, based upon alleged contradictory testimony contained in a wayside bill of exceptions, but not offered for impeachment at the second trial.

If contradictory testimony had been presented, a jury verdict approved by the trial judge would have resolved all conflicts in favor of the winning party and the appellate courts would be without authority to weigh the evidence to determine where the preponderance lies or to pass upon the credibility of witnesses. *See, e. g., Anderson-Gregory Co. v. Lea,* 51 Tenn.App. 612, 370 S.W.2d 934 (1963). Of course, an inconsistent verdict resolves no conflicts and is in law, no verdict at all.

The judgment of the Court of Appeals is reversed and the case is remanded to the Circuit Court of Washington County for a new trial. One half of the costs of this appeal are taxed against plaintiff and one half against defendants.

HENRY and HARBISON, JJ., and HYDER, Special Justice, concur.

COOPER and BROCK, JJ., not participating.

## OPINION ON PETITION TO REHEAR

FONES, Chief Justice.

Defendants' petition to rehear asserts that we overlooked the rule of law that a master is not liable under the doctrine of respondeat superior unless the servant is liable. Second, it is said that we overlooked the fact that plaintiff's attorneys affirmatively induced the trial court to accept the jury verdict, and that waiver and estoppel prevent his reliance on the inconsistency in the verdict.

Evidently we failed to make it clear to counsel that the jury verdict was inconsistent, fatally defective, irreconcilable, and no judgment whatever could be pronounced thereon. The reason that is so is that the master is not liable unless the servant is liable where the only basis for liability of the master is the misconduct of the servant, while acting within the scope of employment. But for that rule, the verdict against defendant railroad companies would have been affirmed by this Court.

We were also fully aware of the entire colloquy between the trial judge and counsel for all the parties to this litigation from which defendants seek to charge plaintiff with waiver and estoppel.

Our reasons for the disposition of this case that we have heretofore made and continue to adhere to, with confidence, are well stated by Mr. Justice Creson in *Milliken v. Smith, supra*:

"The obligation of every jury is summarized in the oath taken by its members to render a true verdict according to the law and the evidence. This applies whether the jury is trying one or more cases. And where it plainly appears from the verdicts returned by a jury that it has not fulfilled this obligation, but acting upon considerations other than those presented in the law and the evidence has returned irreconcilably conflicting verdicts, *it is the duty of the trial court to order the jury to consider further with respect to these verdicts, and if it refuses* (which we doubt will ever be the case), *to order a mistrial, otherwise this Court must reverse.*" (Emphasis added) 405 S.W.2d at 477.

Opinions, comments or assurances of counsel, with respect to the efficacy of a jury verdict do not relieve the trial judge of the duty to see that a verdict is returned upon which a valid judgment can be pronounced, or to declare a mistrial. In our view, it would be of equal logic to hold that defendant railroad companies' silence and acquiescence in the jury verdict precluded setting that verdict aside. Fortunately for said defendants that is not the law.

The petition to rehear is denied.

HENRY and HARBISON, JJ., and HYDER, Special Justice, concur.

COOPER, J., not participating.